JOHN MANN *v.* CHARLES A. CLARK.

*Domicil.    Grand list.    Taxes.    Evidence.*

The plaintiff, then residing in Randolph, hired, during the winter of 1854-5, a farm in Braintree for one year from the 1st of April following, with the intention of residing thereon. In the latter part of March, 1855, he removed his wood and furniture from Randolph to this farm, but, the previous occupant thereof not being prepared to leave it till the 3d of April, the plaintiff on the last day of March, still with the intention of living in Braintree during the ensuing year, left Randolph with the remainder of his personal property, and stopped with a friend in Brookfield until the 4th of April, when he moved on to the Braintree farm and resided there during the remainder of the year ; *Held*, that he was so far a resident of Braintree on the first of April, 1855, as to be liable to assessment and taxation in that town for that year.

The plaintiff having shown, for the purpose of proving himself a resident of Brookfield on the 1st of April, 1855, that he was taxed upon three thousand dollars of personal property in that town that year ; *Held*, that it was competent for the defendant to show that he was not actually *assessed* at that sum by the town authorities, but that he voluntarily offered to be placed in their grand list at that amount, and that they merely accepted his offer.

TRESPASS for taking a horse. Plea the general issue, with notice of special matter in justification, to the effect that the defendant took the horse as collector of Braintree by virtue of a warrant against the plaintiff for the collection of certain taxes, assessed against him upon the grand list of Braintree for the year 1855.

The cause was tried by jury at the June Term, 1857,— UNDERWOOD, J., presiding.

On the trial no question was made as to the regularity of the

defendant's proceedings after the tax was placed in his hands for collection, the only matter at issue being the right to assess and tax the plaintiff in the town of Braintree for the year 1855.

It appeared that the plaintiff, for the two years preceding 1855, had been an inhabitant of and taxed in the town of Randolph; that during the winter of 1854–5 he made a parol agreement with his brother-in-law, one Bolton, a resident of Brookfield, to hire a farm belonging to the latter situated in Braintree, but near Bolton's residence, for one year from the 1st of April, 1855, which farm the plaintiff was to carry on upon shares. In March, 1855, the plaintiff moved all his wood and furniture and most of his provisions from his residence in Randolph to Bolton's farm in Braintree, which he intended to occupy. The former tenant of this farm was not ready to leave on the last day of March, 1855, when his term expired, and he did not leave the place until the 3d of April, 1855. On March 31st, 1855, being Saturday, the plaintiff took his family, his cow, and the remainder of his provisions and a few cooking utensils, and went on the same day from Randolph to Bolton's residence in Brookfield, where he remained until the 4th of April, 1855, when the former tenant having vacated the farm in Braintree, he moved with his family on to the same, and continued to reside there during the remainder of the year, and until March, 1856, when he purchased a place in Brookfield, where he subsequently resided.

It further appeared that the plaintiff's name was placed in the grand list of Brookfield for the year 1855, and that his list in that town for that year was three thousand dollars, for money on hand and debts due, and that he paid taxes thereon for that year.

The defendant offered one Allis as a witness, and proposed to show by him that previous to the plaintiff's leaving Randolph he applied to the selectmen of Brookfield to ascertain at what sum they would set him in the grand list of that town in case he moved there, and proposed to give them his list at three thousand dollars; that the authorities of Brookfield did not consider this three thousand dollars an assessment in Brookfield, and that they did not *assess* the plaintiff at all, but took his list as he offered it, at the round sum named by him. To the admission of this testi-

mony the plaintiff objected, but the court admitted it, to which the plaintiff excepted.

The plaintiff introduced testimony tending to show that when he left Randolph on the last day of March, 1855, he had not determined where he should go to live, but was looking for a new place to purchase and settle on, and that he did not, prior to April 2d, 1855, determine to go to Braintree.

The testimony introduced by the defendant tended to show the contrary, and, among other things, that the plaintiff had requested the tenant of the farm in Braintree, which he subsequently occupied, to move off of it previous to the 1st of April, but that the tenant declined to do so, and also that the plaintiff, previous to the 1st of April, requested such tenant to keep his cow for him on such farm until he should move off and make room for the plaintiff.

Upon this evidence the plaintiff requested the court to direct a verdict in his favor, but the court declined so to do, and instructed the jury that the only question for them to determine was the intention of the plaintiff in going from Randolph. and remaining for the few days at Bolton's in Brookfield ; that if they believed that the plaintiff left Randolph on the last day of March with his family, without any fixed purpose of removing to and locating in any particular town, and continued without any such fixed purpose till after the 1st day of April, then he was improperly assessed and taxed in Braintree, and was entitled to a verdict ; but that if, on the contrary, they found that the plaintiff hired the place in Braintree prior to April 1st, with the view of living there the next season, and removed his goods and furniture there with that purpose, and that his stop at Bolton's in Brookfield was merely for a temporary purpose, such as a visit, or as a matter of convenience until the tenant of the Braintree farm should vacate the premises, and that as soon as the tenant did quit, the plaintiff, in pursuance of his original purpose, moved with his family on to the Braintree farm ; or if they found that the plaintiff went to Brookfield and stopped there, as he did, merely for the purpose of getting a list made more favorably to himself than it otherwise would be, and of thus avoiding his fair proportion of taxes, then in each of those cases the plaintiff was liable to be taxed in Braintree, and was not entitled to recover.

The jury returned a verdict for the defendant. To the refusal of the court to direct a verdict for the plaintiff, and to the charge of the court to the jury the plaintiff excepted.

*William Hebard*, for the plaintiff

*J. B. Hutchinson* and *Lucius B. Peck*, for the defendant.

ALDIS, J. By the statutes of this State relating to the grand list, the owner of personal property is liable to be taxed therefor in the town where he resides on the first day of April.

Prior to the 31st of March, 1856, the plaintiff resided in Randolph. During the month of March he hired a farm in Braintree, with the intention of living there the next season, and moved his goods, furniture and provisions to the house which he was to occupy, and drew his wood to the woodshed on the place. The term of the outgoing tenant expired on the 31st of March, but he did not in fact leave till two or three days after.

On the 31st of March, being Saturday, the plaintiff took his wife and family, and leaving Randolph went to the house of his brother-in-law, in Brookfield, near the farm in Braintree which he had hired. He remained with his brother-in-law in Brookfield till the 4th day of April, when he moved to the farm in Braintree which he had hired, and there he lived for the ensuing year.

The evidence was conflicting, as to the intention with which he left Randolph and stopped in Brookfield. On the part of the plaintiff it tended to show that he left Randolph without any definite intention as to where he should go, and that he was looking for a new place to purchase, and did not determine to go to Braintree till the 2d of April. On the part of the defence it tended to prove that he intended, when he left Randolph, to move to and live in Braintree, and that his stay in Brookfield was merely temporary and without any purpose of residing there. Under the charge of the court, the jury must have found that when he left Randolph he intended to move to and live for the ensuing year upon the farm in Braintree which he had hired, and to which he had moved his goods; and that his stay in Brookfield was merely for a temporary purpose, such as a visit, or as

matter of convenience till the outgoing tenant should vacate the house into which he was about to move, or perhaps for the unlawful purpose of changing his taxation from Braintree to Brookfield, so that he might be assessed at a lower rate; that he had no intention of residing in Brookfield; and that in pursuance of his original design he took his family to Braintree as soon as the outgoing tenant had gone, and there lived for the year.

I. Upon these facts the inquiry arises, first, was his residence in Randolph on the 1st of April?

He left Randolph without any intention of returning and with the intention of removing to and living in Braintree for the year ensuing. He left nothing in Randolph to return to. His family, his goods, his all, went with him or had preceded him. Such a departure extinguished his domicil in Randolph from that date. His residence there ceased when he left the town. As negating a residence in Randolph the case is stronger than *Jamaica* v. *Townshend*, 19 Vt. 267, for there were some facts indicating an expectation at least, if not an intent to return. Here there is nothing of the kind. *Kilburn* v. *Bennett*, 3 Met. 199, stands upon the same principle, otherwise the evidence held to be admissible would have been of no importance in the case.

II. As his residence and liability to taxation in Randolph ceased with his departure from the town, the next inquiry is, where was his residence after he left Randolph?

It is a well settled principle of the law of domicil that every person must have a domicil somewhere. Every taxable inhabitant of the State must have a residence for the purpose of taxation somewhere in the State. He may not receive the protection of the laws, and enjoy the blessings of civil government, and yet evade the payment of his share of the taxes that sustain them, by keeping up an indefinite and shifting residence. So for one and the same purpose, as in this case for taxation, he can have only one residence.

His residence must have been in Brookfield, where he was on the 1st of April, or in Braintree, where he was going to reside and to which he was then moving.

The question of residence is to be determined not by any one single fact, but by all the facts and circumstances which tend to

Mann *v.* Clark.

show where the party is whose residence is in question, where his family is if he have one, where his house or dwelling is, and where his household goods are, his business, his intention as to residing temporarily or permanently where he is, or elsewhere, and generally where his *home* is. Hence each case must depend very much upon its own circumstances, and will furnish but an imperfect precedent for any other. As is remarked by Ch. J. SHAW in *Thorndike* v. *Boston*, 1 Met. 242, "it may often occur that the evidence of facts tending to establish the domicil in one place would be entirely conclusive, were it not for the existence of facts and circumstances, of a still more conclusive and decisive character, which fix it beyond question in another. So, on the contrary, very slight circumstances may fix one's domicil, if not controlled by more conclusive facts·fixing it in another place."

*Prima facie*, the personal presence of a party at a place, standing alone and unexplained, is evidence of residence at such place. Thus the personal presence of the plaintiff with his family at Brookfield is evidence that his residence was in Brookfield on the first day of April. But it is not conclusive. It is to be considered in connection with the purpose and intention of his being there. A traveller who stops on his journey for business or pleasure, whether his stay be long or short, would not be deemed by any one a resident of the place he stops at. The plaintiff, as the jury have found, was going from Randolph to Braintree with the intent of living for the year at Braintree. He had hired a house in Braintree and had moved his goods there. On his journey he stopped for three days in Brookfield, for a temporary purpose, but with no intention of residing there. Clearly he was only a traveller in Brookfield ; he was going to his home in Braintree. His residence began at Braintree when it ended in Randolph. His house, his goods, his business were in Braintree. His intention was to live there. He was then on his way to his new home. His personal presence there was not indispensable to make it his home. Potentially, in the eye of the law, he was there, because he could not legally be anywhere else. Tenants and purchasers generally take possession of their farms on the first day of April. In leaving their old residences they frequently travel through many other towns before reaching

their new homes.   They may stop on the way from business, pleasure or necessity.   Would it not be absurd to hold that they became liable to taxation in the town or towns through which they thus travel or in which they may chance to stop ?   Their real residence for the year begins with the 1st of April in the town in which upon and from that date they substantially reside, and the spirit of the law is that their residence and their taxation for the ensuing year should go together.

The attention of the jury was properly directed to the other circumstances which showed that the presence of the plaintiff in Brookfield was not as a resident, and that his residence had ceased in Randolph and begun in Braintree.   This is not the case of a residence actually existing in one place, but attempted to be controlled by an *intention* merely to remove to another.   Such was *Bruce* v. *Bruce*, 2 Bos. & Pul. 229 ; and *Jamaica* v. *Townshend*, 19 Vt. 267.

Here the plaintiff had a house to which he was going, in which his goods were and where he was intending to reside for the year, a farm which it was his business to carry on.   He had no other residence.   That in Randolph had ceased.   His stay in Brookfield was but that of a traveller on a journey.   These facts coupled with his intention, and that intention consummated by actual residence in Braintree from the 4th of April, were, we think, properly held by the court as controlling and decisive of a residence in Braintree, and a residence having its legal beginning on the 1st of April   See the cases collected in 1 Am. Lead. Cas. 733 *et seq.*

As to the admission of the evidence of Allis, we see no just ground of exception.   The plaintiff had been allowed to show that he was taxed in Brookfield for three thousand dollars, and therefore was a resident of that town.   The evidence of Allis was admitted to rebut this, by showing that it was not an assessment by the selectmen, but rather an assent by them to his voluntary offer to be so taxed, and as tending to show that his stay in Brookfield was merely to give color to such unlawful change of taxation.

Judgment affirmed.