## HOLMES *v.* CLISBY and *vice versa.*

1. H. was a merchant in Macon engaged in selling, among other things, a shoe known as "Queen Quality." A firm of which C. was a member was his sole competitor in the sale of this shoe at that place. The regular price of the shoe was three dollars per pair. H. advertised that he would sell a perfect quality of the shoe at $2.65. C. then caused to be inserted in a local newspaper the following article: "LADIES OF MACON. QUEEN QUALITY We hereby give notice that the firm of Clisby and McKay is our only authorized agent in Macon for the sale of Genuine QUEEN QUALITY shoes under our guarantee. Our damaged shoes we sell to certain dealers under an agreement that they shall be sold as imperfect goods; as we are not willing that damaged or second quality shoes of our make shall be offered to the public as first quality, even when the damage is not apparent to the eye. Those who buy Queen Quality shoes of other dealers than those designated by us as our authorized agents will have only themselves to blame for any disappointment or loss that may ensue. Thomas G. Plant Co." H. brought suit against C. as for a libel, alleging that the publication was intended, and was understood by the public, to refer to him, and that the author intended by the publication to imply, and was understood by the public to mean, that plaintiff was selling as perfect shoes and of first quality those which really had latent defects in them not apparent to the eye, and that plaintiff was thereby endeavoring to cheat and defraud the buying public. *Held*, that the petition set forth a cause of action, though no special damage was averred.

2. Whether or not the publication was a privileged communication would depend upon the intention with which it was published. If in good faith, with the sole purpose of protecting the interest of the defendant, it would be; if maliciously, for the purpose of injuring the reputation of the plaintiff, it would not be. In view of the allegations of the petition, the question of privilege is one which must be raised by plea and submitted to a jury as an issue of fact.

3. The pendency of an action against one person for causing the publication of a libellous article on one day, is no ground for abating altogether a suit against

another for causing the publication of the same article on the same day and on other days, even if it would be a sufficient reason to eliminate from the second suit so much thereof as referred to the publication alleged in the first suit.

Argued October 8, — Decided October 30, 1903.

Action for libel. Before Judge Hodges. City court of Macon. April 6, 1903.

*Daly, Moore & Cochran, Marion W. Harris*, and *Dessau, Harris & Harris*, for plaintiff.

*Steed & Ryals* and *Lane & Park*, for defendant.

COBB, J. Holmes brought an action against Clisby for libel. The allegations of the petition were in substance as follows: Holmes and the firm of which the defendant was a member were the only merchants in the city of Macon engaged in the sale of a brand of ladies' shoes known as "Queen Quality." The regular price of this shoe was three dollars, but the plaintiff, having a quantity of the shoes on hand which were not selling as rapidly as he desired, advertised in the local newspapers that he would sell the genuine Queen Quality shoes at $2.65. These shoes had been bought from the manufacturers as perfect goods and of first quality. After the insertion of this advertisement, and after the fact that plaintiff would sell the shoes as advertised had become known to the general public and to the defendant, the latter caused to be inserted in one of the local papers, on several dates, beginning with September 9, and ending with the issue of October 2, 1902, the following notice:

"LADIES OF MACON. QUEEN QUALITY.

"We hereby give notice that the firm of Clisby and McKay is our only authorized agent in Macon for the sale of genuine QUEEN QUALITY shoes under our guarantee. Our damaged shoes we sell to certain dealers under an agreement that they shall be sold as imperfect goods; as we are not willing that damaged or second quality shoes of our make shall be offered to the public as first quality, even when the damage is not apparent to the eye. Those who buy Queen Quality shoes of other dealers than those designated by us as our authorized agents will have only themselves to blame for any disappointment or loss that may ensue.

Thomas G. Plant Co."

The petition alleges that the defendant intended by the insertion of the article, and was understood by those who read it to mean, that plaintiff was pretending to sell, without authority, the genuine Queen Quality shoes, and thereby to mislead the public and secure trade by false and fraudulent means; that the shoes which plaintiff was selling were imperfect and damaged, and that while plaintiff had agreed with the manufacturer to sell them as such, he in fact was offering them to the public as shoes of the first quality, when they had latent defects in them undiscoverable to the eye; that plaintiff was unworthy of confidence, and customers should beware of him, as they were likely to be disappointed and lose money. The petition alleges that the article applied solely to plaintiff, was intended so to apply, and was understood by those who read it to so apply. Damages are laid in the sum of $10,000, but no special damages are averred. The petition was demurred to on the ground that no cause of action was set forth, and that the conclusions which the plaintiff drew from the article were not justified by the language used. The demurrers were sustained, and the plaintiff excepted. The defendant excepted by cross-bill to the overruling of his plea in abatement, based upon the ground that another suit was pending against a different person based upon the same alleged cause of action.

1. "A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule." Civil Code, § 3832. A publication coming within this definition is actionable without an averment of special damage. But a publication which has the effect merely of disparaging a tradesman's goods is not actionable without an allegation of special damage. Boynton *v.* Shaw Stocking Co. (Mass.), 15 N. E. 507; Boynton *v.* Remington, 3 Allen, 397; Dooling *v.* Budget Publishing Co. (Mass.), 59 Am. Rep. 83. The controlling question, therefore, to be determined in such a case as the one now under consideration is whether the publication has a tendency to injure the reputation of the person against whom it is directed and expose him to public hatred, contempt, or ridicule, or whether its effect is simply to disparage goods which he is offering for sale. It is possible that a publication may have both of these effects. Dooling *v.* Budget Publishing Co., supra. And

whenever a publication is susceptible of two constructions, one of which would make it libellous and the other not, it is for the jury to say whether the words are in fact libellous. *Beazley* v. *Reid*, 68 *Ga.* 380; *Colvard* v. *Black*, 110 *Ga.* 646. The plaintiff can not by innuendo draw from a writing a conclusion not justified by the language used; but it is competent for the plaintiff to explain in this way an ambiguous publication, to point out the intention of the author, and to show wherein the effect of the language was to injure his reputation. *Park* v. *Insurance Co.*, 51 *Ga.* 510. And the rule is that a publication must be construed in the light of all the attending circumstances, the cause and occasion of the publication, and all other extraneous matters which will tend to explain the allusion or point out the person in question. *Colvard* v. *Black*, 110 *Ga.* 647. Words harmless in themselves may become libellous when the circumstances under which they are published are such as to convey a covert meaning to the reader reflecting injuriously upon the reputation of the person to whom they refer. These circumstances, as well as the existence of a motive for using the words in a covert sense, should be considered in determining whether they are libellous, when applied to the person to whom they expressly refer or to whom they must have been intended to refer. The publication under consideration in the present case was manifestly in disparagement of the shoes which the plaintiff was offering for sale, but it was more than this. When all the circumstances as detailed in the petition are taken into view, a jury would be authorized to say that the author intended, and would be so understood by those familiar with the circumstances, to reflect upon the reputation of the plaintiff and expose him to public hatred and contempt. A construction of the words in the light of these circumstances, which would make the publication charge, in effect, that the plaintiff was a cheat and was endeavoring to palm off on the public damaged goods for perfect goods, and that, too, imperfect goods which contained merely latent defects, would be neither forced nor strained.

That the publication was intended to refer to the plaintiff can not, in view of the allegations of the petition, admit of doubt. If one reading the publication knew that it referred to the plaintiff, knew that he was selling Queen Quality shoes at a reduced price, the inference was irresistible that he was selling damaged goods,

and when this is coupled with the further fact that the plaintiff had advertised that his goods were perfect and undamaged, the conclusion is well warranted that the author of the publication intended to charge that the plaintiff's advertisement was false, and that in inserting the advertisement he was guilty of a deliberate falsehood and intended thereby to cheat and defraud the ladies of Macon who were likely to become his customers. Such a publication, in our opinion, exceeded the bounds of legitimate competition. It is right and proper for tradesmen to puff their own goods to the disparagement of those of others, but they must not allow their zeal to betray them into an attack upon the personal reputation of their competitors for honesty and integrity. It is not always easy to draw the line between what would be considered legitimate competition and a libellous publication, but the writing complained of in this case was, in our judgment, susceptible of the construction which the plaintiff put upon it. The case of *Behre* v. *National Cash Register Company*, 100 *Ga.* 213, is closely in point. There the publication charged simply that the plaintiff was no longer connected with the National Cash Register Company, and that any contracts made by him for the company would be void. The court held that these words were susceptible of the construction which the plaintiff put upon them, to the effect that he was endeavoring to represent a company which he had no authority to represent, and was in this manner endeavoring to defraud and cheat the public. There was no allegation of special damage in that case, and the decision was put distinctly on the ground that the publication, construed in the light of the innuendoes laid in the petition, constituted a libel, for which an action for general damages would lie. The defendant in error relied upon the cases of Boynton *v.* Shaw Stocking Company, and Boynton *v.* Remington, both of which are cited above. In each of those cases the publication complained of was held to be merely in disparagement of the plaintiff's goods, and not a libel upon his reputation. It is to be admitted that these decisions are very closely in point. There are, of course, some points of difference between the publications in those cases and the one now under consideration, but these differences are perhaps immaterial. Notwithstanding the very high respect which we entertain for the distinguished court which rendered those decisions, we are unwill-

ing to allow them to influence us to make a decision which in our judgment would be unsound.

2. One of the demurrers was on the ground that the publication was a privileged communication. The Civil Code, § 3840, states what kinds of communications are to be deemed privileged under the law of this State. The only one under which the publication involved in the present case could possibly be deemed to have been privileged is in the following language: " Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned." The petition charges that the publication set forth was false and malicious, and that the plaintiff in causing it to be inserted in the newspaper maliciously intended to injure the plaintiff's reputation and also his trade and business of a shoe merchant. If the communication is properly to be classed as one made in the interest of the defendant, the question whether it is or is not privileged would be dependent upon the intention with which it was published. If bona fide, with the sole purpose of protecting himself, it would be ; if otherwise, it would not. This question of intention is a question of fact, to be submitted to and determined by a jury. If published with such an intention as would justify a classification of the communication as privileged, this would be a matter of defense of which the defendant could avail himself by proper plea. See, in this connection, *Pearce* v. *Brower*, 72 *Ga.* 243 ; *Augusta News* v. *Radford*, 91 *Ga.* 499.

3. The plea in abatement alleged that a suit had been brought against the Thomas G. Plant Company for the same cause of action as that set forth in the present petition. A copy of the petition in that suit was attached to the plea. That petition alleged that the defendant published the article complained of in this case, " on the ninth day of September, 1902, and on —— days immediately thereafter." That, then, was a suit for the publication of the article in question on the day named ; what follows the averment of the date being so vague and uncertain that it can not be considered as an averment of other dates. The present action is based upon the publication of the article named on seven specified days, only one of which corresponds with the time of the publication alleged in the suit against the Plant Company. The two actions, therefore, are not in all respects identical; and the plea in abate-

ment, which sought to abate the entire suit, and not merely so much thereof as was identical with the suit against the Plant Company, was properly overruled, even if separate actions could not be maintained against persons joining in the publication of a libellous article on the same day.

*Judgment on the main bill of exceptions reversed; on cross-bill affirmed. All the Justices concur.*