## 41264. SOUTHLAND PUBLISHING COMPANY v. SEWELL.

ARGUED APRIL 5, 1965—DECIDED MAY 27, 1965—
REHEARING DENIED JUNE 11, 1965.

804

*Wheeler, Robinson & Thompson, Emory F. Robinson,* for plaintiff in error.

*Robert J. Reed, Darrell W. MacIntyre,* contra.

JORDAN, Judge. ■ This action is predicated upon an alleged newspaper libel which is defined by *Code* § 105-703 as: "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of any individual and expose him to public hatred, contempt, or ridicule, shall constitute a newspaper libel, the publication of such libelous matter being essential to recovery."

A publication coming within this definition is actionable without any averment of special damage to the plaintiff, *Holmes v. Clisby,* 118 Ga. 820, 822 (45 SE 684), *Witham v. Atlanta Journal,* 124 Ga. 688, 693 (53 SE 105, 4 LRA(NS) 977), *Sheley v. Southeastern Newspapers, Inc.,* 87 Ga. App. 167 (73 SE2d 211), *Davis v. Macon Tel. Publishing Co.,* 93 Ga. App. 633 (92 SE2d 619), or of actual malice on the part of the defendant. *Code* § 105-706; *Horton v. Georgian Co.,* 175 Ga. 261 (1) (165 SE 443). As stated in the *Horton* case in headnote 1, "a false defamation of another, by means of a newspaper publication which may tend to injure the reputation of any individual and expose him to either hatred, contempt, or ridicule, is libelous. The publication of a statement in writing, which is untrue, and which may tend to injure the reputation of another and expose him to public hatred, contempt, or ridicule, will be presumed to have been a malicious publication until sufficient evidence has been produced to rebut the presumption." And as stated in the *Witham* case, supra, at p. 693: "It is clearly apparent from the language now

under consideration that the statement therein contained tended to injure the reputation of the plaintiff, and to expose him to public hatred or contempt; and it was therefore actionable without any allegation of special damage arising therefrom."

As a general rule the question of whether or not a particular publication is libelous, as well as whether the libelous matter was of and concerning the plaintiff, is a question of fact for determination by a jury. *Horton v. Georgian 'Co.,* 175 Ga. 261 (2), supra; *Whitley v. Newman,* 9 Ga. App. 89 (1) (70 SE 686); *McIntosh v. Williams,* 160 Ga. 461 (128 SE 672). "Where the language of a publication is reasonably susceptible of the construction that it makes a libelous charge, it becomes libelous when it conveys that charge and would be so understood by the person to whom the writing might be communicated." *Brandon v. Arkansas Fuel-Oil Co.,* 64 Ga. App. 139, 144 (12 SE2d 414). "Whenever a publication is susceptible of two constructions, one of which would make it libelous and the other not, it is for the jury to say whether the words are in fact libelous . . . The plaintiff cannot by innuendo draw from a writing a conclusion not justified by the language used; but it is competent for the plaintiff to explain in this way an ambiguous publication, to point out the intention of the author, and to show wherein the effect of the language was to injure his reputation . . . And the rule is that a publication must be construed in the light of all the attending circumstances, the cause and occasion of the publication, and all other extraneous matters which will tend to explain the allusion or point out the person in question." *Holmes v. Clisby,* 118 Ga. 820, 823, supra.

The language of an alleged libel must be construed, not by what the writer intended to mean, but by the construction which would be placed upon it by the average and reasonable reader. *Southeastern Newspapers v. Walker,* 76 Ga. App. 57, 60 (44 SE2d 697); *Davis v. Macon Tel. Publishing Co.,* 93 Ga. App. 633, supra. "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably

bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." *Constitution Publishing Co. v. Andrews,* 50 Ga. App. 116, 117 (177 SE 258); *Ledger-Enquirer Co. v. Brown,* 214 Ga. 422 (105 SE2d 229).

With these principles in view it is clear to this court that the language under consideration here was at the very least reasonably susceptible of a construction by the average reader which would render it libelous under the provisions of *Code* § 105-703; and under the allegations of the petition the determination of the question of whether or not the tendency of the alleged publications was to bring the plaintiff into hatred, contempt, or ridicule, was an issue of fact for the jury as it cannot be said as a matter of law that the alleged libel was not of and concerning the plaintiff.

To charge falsely that the police or other law enforcement officers pulled a "surprise raid" upon one's place of business and found certain stolen, contraband, or otherwise illegal goods there which were confiscated or impounded, as the publications complained of may be found to have done, not only tends in a general way to injure the reputation of the owner and expose him to public hatred, ridicule and contempt, (which is sufficient under *Code* § 105-703 to constitute an actionable newspaper libel) but more specifically, such defamation may be found to impute to the owner the commission of a crime and to constitute a charge on him with reference to his trade or business, such being actionable per se, whether the defamation be oral or written. *Code* § 105-702. "To render words actionable per se, it is not necessary that they should, in express words, charge another with a crime punishable by law; it is sufficient if they impute a crime, in such terms as that the hearers understand that this is what is meant." *Lewis v. Hudson,* 44 Ga. 568. "It was unnecessary that a specific crime should be charged to enable the plaintiff to maintain his action. Charges made on one in reference to his

trade, office or profession calculated to injure him therein are actionable, and no special damage is essential to support the action." *Hardy v. Williamson*, 86 Ga. 551 (b) (12 SE 874, 22 ASR 479).

The fact that the defamatory publication in terms designated a certain named place of business, "Smith & Sewell Garage," and did not refer to the plaintiff individually, does not as a matter of law prevent a recovery by him, where as here, the plaintiff alleged that he was a co-owner of the garage, and was understood by the citizens of Forsyth County to be the "Sewell" affiliated with that business, and that he was therefore identified personally in the publications complained of. *Weatherholt v. Howard*, 143 Ga. 41 (1) (84 SE 119). *Davis v. Macon Tel. Publishing Co.*, 93 Ga. App. 633, supra. In the *Weatherholt* case, it was held that in a suit to recover general damages for the publication of a libel, while the publication in terms designated a certain named company, it was competent for the plaintiff, under proper allegations by way of innuendo, to show that he formerly owned and did business under the name of the company designated, that this was a trade name of which the plaintiff's individual name was a component part, and that the statements alleged to be libelous in fact referred to the plaintiff and imputed insolvency to him.

The case of *Witham v. Atlanta Journal*, 124 Ga. 688, supra, which is strongly relied upon by the defendant as authority for the proposition that the plaintiff would have no individual right of action in a case such as this, is not in conflict with the *Weatherholt* case, nor with the ruling herein made. The plaintiff in that case had not sought to predicate his cause of action on the fact that he owned an interest in a business about which libelous matter had been written but was seeking to recover because his surname had been mistakenly used as an adjective descriptive of a bank which had reportedly failed. The court in that case held that the alleged libelous publication clearly referred to and concerned the bank and not the plaintiff and since the plaintiff did not allege that he owned any interest in the business, the publication could not be a charge on him in reference to his trade or business. The plaintiff in this case did allege that he owned an interest in the "Smith & Sewell

Garage," about which the alleged libelous publication had been written, and under the allegations of the petition, a finding was authorized that the instant publication was of and concerning the plaintiff and tended to injure his reputation and to subject him to hatred, ridicule and contempt.

The petition in this case clearly stated a cause of action for the recovery of general damages because of the defendant's alleged libel of the plaintiff in the articles set forth in the statement of facts and was not subject to the grounds of general and special demurrer in which it was asserted that the petition did not state a cause of action for the reasons that the plaintiff was not identified in the articles; that the articles were not libelous; that if libelous, the plaintiff was not a proper party to bring the action; that no basis of express malice was pleaded; and that no special damages were alleged.

■ The plaintiff alleged in paragraph 2 of the amended petition that: "on Sunday, July 14, 1963, and Monday, July 15, 1963, news bulletins were read on Radio Station WGGA, to whom defendant supplies news information, condensations of the articles appearing in the Daily Times of Sunday, July 14th, wherein it was stated by the reporter, whose name is unknown to plaintiff but well known to defendant, that law officers had seized $30,000 in stolen cars in Forsyth County, Georgia, and that a surprise raid had been conducted on the Smith & Sewell Garage which information was furnished by defendant and the same being libelous as will hereinafter be set forth." This allegation was irrelevant and immaterial to the plaintiff's cause of action and should have been stricken on demurrer as contended by the defendant.

■ The trial court did not err in overruling the general demurrers and all grounds of the special demurrers with the exception of those special demurrers addressed to that portion of paragraph 2 which is set forth in Division 2 of the opinion.

*Judgment affirmed in part; reversed in part. Felton, C. J., and Russell, J., concur.*